May it please the court. Congress required that the Bureau of Prisons provide residential substance abuse treatment for all eligible prisoners beginning in 1997. Congress also provided a specific statute defining what an eligible prisoner was. Someone suffering from a substance abuse problem, someone willing to participate in residential treatment. In 2009, for the first time, the Bureau of Prisons initiated a third criteria. That third criteria was that the person had also to be eligible for community corrections at the beginning of the residential program. This additional criteria eliminated 44% of the prison population from possible eligibility for residential treatment. Shane Abbott suffered remedial injury from the application of this rule. He lost any opportunity for a sentence reduction. He lost any opportunity for more than six months of community corrections. The addition of this criteria violated the plain meaning of the statute. Unlike McLean, where the court was construing 3621E2, which involves May, this case involves 3621E1, which involves shall. And that shall and that definitional section, as well as the context of the statute, establishes that the Bureau of Prisons violated the third criteria. In addition to the statutory violations, this also violated Rule 706. There was no notice that this was the type of change that was occurring in 2009. There was no adequate notice. There was no reasoning whatsoever. There was not even clearly stated that this huge effect on 44% of in terms of the Bureau of Prisons rule, what is the third criteria literally? The literal third criteria is that they have to be eligible for community corrections at the beginning of the residential program. And that third started with two, and then in the 2009 rule expanded to a third section. And was that necessary for eligibility to get the drug treatment? Or is it necessary to get a sentence reduction? The critical distinction with McLean is this is for participation in the program at all. If you can't participate in community corrections, you cannot participate in the treatment program, never mind the sentence reduction. So those are two separate things. This is the innovation of 2009 because Now, maybe I'm confused a little on the fact. I thought that somewhere in midstream here the Bureau of Prisons reversed direction and first said that was eligible to participate. And the case went down on a remand on that. And the district court determined it didn't have jurisdiction to review a denial of sentence credit. There were two separate issues. One regarding the participation. That issue is still alive because of the 19-month delay eliminated any chance for him to obtain the sentence reduction or more than six months of community corrections. Separately from that, the Bureau of Prisons on solely the sentence reduction said that the kidnapping criteria for a prior conviction exclusion applied to that. And they held that, no, this is an individual discretionary decision. And under Reeve, there was no jurisdiction. That is incorrect. Before we get there, Mr. C, I guess the first argument that you made, isn't that muted by the fact that he got all the relief he was seeking on the first appeal? No. Why not? Because both under Reynolds and Serrato, under Reynolds, because of the 19-month delay, he can get no sentence reduction of any kind. It comes out to exactly what his projected release date would have been without any benefit. Further Well, what would be the relief that you would be seeking on that since he's been released? The relief would be the same as in a whole slew of the RDAP cases where he can be partially remediated by having, under 3583E, going back to the district judge and saying, look, I did not, because of a legal violation, an unlawful treatment in the Bureau of Prisons, that's in the interest of justice a reason for a modification or reduction of the period of supervised release. I guess my question is, can't he do that, even though it might be mooted before us on this appeal? Isn't he free to, nevertheless, based on this, go back to the district court and ask for a modification of the sentence anyway? He would not have a finding that his rights were violated in the court. I think the rationale from Johnson and the other cases are that where there is a finding that the person had his rights violated during the service of the sentence and, as a consequence, over-served the sentence, that that is the type of finding that's required to provide this equitable considerations of a great import that Johnson talks about as a reason for the reduction. Here, the Bureau of Prisons is basically saying, hey, we maybe made a mistake, maybe didn't, maybe we would have done the same thing anyway. We don't really know. But those types of discretionary decisions are exactly what the Bureau of Prisons does. They provide no rights of any kind. So you would want us to make a, to decide almost a declaratory kind of relief and then remand to the district court for a sentence modification? No. That's what you're really asking for, no? What we would be asking for would be a grant of the writ, a declaration that his rights were violated by both the delay in participation based on this additional criteria and that remanded for the sentencing court to take any further action. There is a limitation on the 3583E, and that is that you have to serve one year of supervised release before you can ask for the reduction. So it wouldn't be as immediate as that, but it would be within 35, 28 U.S.C., 2243, that it would be within the equitable power of the court to do that. How long has he been out on supervised release? He's just got out, I think. Just got out? This month. I think August 3rd was his release day. Mr. Sedgwick, I just want to make sure, when you're talking about asking that we grant the writ and declare that this error was made, I understand there's really two errors. And the first one is sort of gone by the wayside, and I don't know much about that. And that has to do with his disqualification because there are outstanding warrants. That was cleared up, I think, and then there was a subsequent determination that he was not qualified because of the unlawful restraint conviction under Montana law. And just to be clear, you're talking about the sentence reduction? Yes. Okay, yes. And that's what you're asking us to speak to when we grant the writ? Yes. Okay. And I would say that that is dependent on concessions that I'm not sure have been articulated clearly about whether the BOP is relying in any way on the earlier disqualification for the detention. Okay, well, perhaps that's a clarification we can ask opposing counsel. But I just wanted to be clear about the relief you are seeking, and I think Judge Wardlaw was trying to accomplish the same thing. So I think I'm there now, and I appreciate your help. I have a question, and we'll let you take an extra minute if you need. Thank you. But if we were to determine that the decision of the Bureau of Prisons that he's not eligible for sentence reduction because of the Montana unlawful detainer conviction is wrong, is error, and we were going to remand to the Why, again, do you think we would have to reach the first question, whether they made a mistake not letting him go in the program initially because of the warrant? Because if they are saying that the delay was caused by a determination that he was ineligible for the sentence reduction as opposed to participation, then there would still be an active issue that we would be asking for. So that's why I was suggesting in the reply brief that the BOP should make an explicit concession on that point, or we should have a decision on it.  Thank you. Thank you. Thank you. And now for the government. Ms. White. Hey, please, the Court. My name is Natalie White, and I represent the Federal Bureau of Prisons in this case. I think it's important. We've been talking about some of the errors that happened, some of the factual changes that occurred as this case progressed, both factually and procedurally, and I think that this is a good opportunity for us to clear those up. So could I – forgive me for jumping in here, but my notes that I took as I kind of waded through this may be wrong, and so I just really appreciate you correcting them, but what I understood is that the BOP discovered guidance which indicated that he was eligible for the program and that these warrants had been quashed. That's correct. Has that – okay, so you're not relying on that. Those are the two changes that occurred that changed the factual footing of this entire case. Okay. But then there was a determination, as I understand it, that he was disqualified because of the Montana conviction. That's correct. Initially, he had been denied RDAP admission, and that was because of these outstanding warrants. Okay. And then later on, when he was granted admission into RDAP, then a review was done for early release eligibility. Okay, so is opposing counsel right then? We still need to rule on, if I'm understanding correctly, or at least you're certainly not conceding, this issue about the Montana conviction for unlawful restraint equating to or counting as a kidnapping conviction that disqualified him. Is that right? Well, that issue is properly before the court. Of course, our argument is that the district court was correct and that there was no judicial review for that particular substantive decision. Separate issue. So you think we don't reach it, but it's certainly not conceded. That would be the live issue. That's correct. Thank you so much for the clarification. And just going back a little bit to talk about these two factual developments that occurred, one was first that in preparation for the appeal, we reviewed these warrants that were outstanding and did find out that one had been quashed and it had actually been quashed prior to the case even being filed at the district court level. And so the other issue that occurred was the realization that this new memo, which did not exist at the time when the petitioner was first reviewed for RDAP, it came into effect a few months after the theft. So it was not in place when he was first reviewed. However, it was in place when he was reviewed finally by RDAP. It just was not something that was brought to the attention of the court. The memo that you're speaking of now, is that what's referred to in your brief as internal guidance? Yes, that is the internal guidance from November 2010. Thank you. And it's important, especially when the petitioner is addressing the delay issues, and this goes also to mootness and some of the difficulties the court would actually have in trying to rule on these earlier claims that were filed in the original brief to this court, that in reviewing that decision from the district court, you're looking at a decision from the district court that was based on inaccurate facts. You're based on a decision from the district court that was based on a decision by the BOP that it actually changed that was based on those inaccurate facts. So now we have inaccurate facts, an entirely new decision. And so in order to review those claims that were submitted, it would be a lot of guessing, a lot of speculation as to what would have happened, what should have happened. The one thing that a petitioner likes to point to is the fact that now BOP found that memo and was able to grant him admission to RDAP. However, one thing that was petitioner's responsibility throughout his incarceration and something all inmates have as a responsibility is to help seek out these warrants, try and get them resolved, and make them go away. And that is something that most petitioners do without counsel. And if that's something that we could have determined way early on, that may have changed the entire face of this case. That was not brought to the court's attention at the time of the habeas petitions filing or any time during the district court proceedings. And so where to point the actual blame for delay and what caused it could be based on several different factors. There are so many different factors. Even if he had been granted RDAP admission at that time, there's no way to be certain when he would have started, how much time would have remained. As you know, he already did the complete RDAP program and was given six entire months of CCC placement for transitional purposes, which has been deemed appropriate for most inmates. His argument is there's an incentive given to complete the program, a sentence reduction, and he lost out on that even though he completed the program. And it's sort of misrepresented somewhat where a petitioner is saying that he didn't get this early release eligibility due to his inability to complete CCC time. This is, again, based on the initial brief. But that is not correct. He was not denied early release eligibility for that first initial brief. He had never even been evaluated for it. His early release eligibility was denied specifically because of these prior offenses, specifically because of his unlawful restraint offense. Let me ask a practical question about looking forward. If we were to decide that we have jurisdiction to look at the question whether he was ineligible for sentence reduction on a categorical basis and we were to say or conclude that unlawful restraint under Montana law isn't equivalent to kidnapping, so it shouldn't have been viewed as a violent felony, so he's entitled to some sentence reduction, but he's out. So now what is his term of supervised release, and could that still be shortened? First, to answer your question, Your Honor, it's important to point out that, well, first, he does have, I believe, three years of supervised release and that he certainly has the opportunity to go to the court and ask to reduce that amount of supervised release. And there are many factors that go into that beyond whether or not he was not given a certain amount of early release time from RDAP program. Supervised release certainly involves all sorts of factors and purposes that differ. However, and also in response to your question, there is a standard you were saying that if you do decide that you are able to review the determination regarding early release, that evaluation has to be considered in the framework of the APA, in the arbitrary and capricious standard. It's not whether or not unlawful restraint doesn't equate to kidnapping. The question is whether Bureau of Prisons, were they reasonable in making that determination? Was that a reasonable determination? I think the question is under APA review is whether the BOP acted arbitrarily and capriciously in determining that unlawful restraint was equal to kidnapping. The unlawful restraint is defined in the Montana statute at the elements of kidnapping. That's correct, Your Honor. And wouldn't it be arbitrary and capricious or contrary to law? Excuse me, Your Honor? The standard is arbitrary and capricious or contrary to law. Or contrary to law. That's correct. And it's still based on agency action and the reasonableness of their action in evaluating the statute. Is that your best argument, that that was a correct determination? Sure, Your Honor. In evaluating the unlawful restraint statute, which is Montana-based in this particular case, and they're comparing it to the UCR definitions, which has been upheld by the Ninth Circuit that the BOP uses to compare prior offenses. And the UCR definition, when you apply unlawful restraint, will lead you to the category of kidnapping. And that's considered a group A offense where unlawful restraint is categorized. This is found in the record. And when you compare those elements to the Montana statute, they are nearly identical. In fact, if you go back to the Montana statute, which I believe Petitioner has issues with the word restraint versus detains in those two statutes. And there's a table of these two statutes. Your Honor, I have about a minute. I've got it here. And it's on 25 of our answering brief. There's a table of those two statutes written out. And when you compare the elements of those two statutes, which is all the BOP looks at, they are not allowed to look at the underlying conduct for that prior offense. The two statutes show the two similar elements of unlawfulness and of restraint that interfere substantially with liberty. There's no requirement of any sort of physical threat or physical contact. Hasn't Montana in its common law said that unlawful restraint is at the low end of the spectrum of restraint, that it's the least type of restraint? My interpretation is that it's more of a misdemeanor kidnapping offense. Isn't it a lesser included? It is lesser included. In fact, both kidnapping and unlawful restraint in Montana would qualify as kidnapping based on the elements of those two crimes. But to the extent it's a lesser included by definition, it's missing an element. It's missing something. Well, what it's missing in Montana, as far as the kidnapping statute goes, are the elements of being secluded in a secretive place or the threat or use of force. And if you compare that to the UCR definitions, those are not required. And that is what Bureau of Prisons do. They compare the Montana statutes to the UCR definition. And unlawful restraint definition does match up. They equate. And so does the kidnapping statute. There's a reason why the Bureau of Prisons allowed both felony and misdemeanor crimes such as kidnapping. Counsel, I'm afraid your time has expired. But if Judge Wardlaw or Judge Christin have further questions, I would let you continue. May I ask one, Judge Gould? My question for a government attorney is whether or not locking somebody in a room without their knowledge would satisfy the elements of unlawful restraint under Montana law. Locking someone without their knowledge? Is the person locking them in the room unaware that they're locking them in the room? The person's in the room, one person's in the room, and somebody else locks the door intentionally, but the person in the room doesn't know it. If they intentionally restrain them and the court determines that it substantially interferes with their liberty, that appears it would qualify. It would qualify, wouldn't it? Yes. Thank you. In this case, of course, Your Honor, the unlawful restraint did include. But we don't look at the facts, do we? We certainly do not. Thank you. If you have no further questions, they matter. Thank you very much. Mr. Satie, your time was up, but we're going to permit you to have a minute of rebuttal here. Thank you, Your Honor. Four points. First of all, the new memo page, the Further Exeter to Records 161, basically is readopting the exact same ordinarily standard in 7310.04 that was always in effect. Two, the facts just don't matter why the person isn't in the community corrections. The problem is if he can't be in community corrections for any reason, he should be eligible for the program and should have started it right then. Third, at ER 256, the period of supervised release is not three years, it's five years, so it's a significant benefit for him. And fourth, as far as the UCR, the term that was adopted in the regulations is simply kidnapping. Kidnapping has a generic federal meaning. We have guidance from the court recently that we provide in the 28J letter that says exactly what the process is. It's a simple process, and it's one that is fair instead of having the absurd result that occurred in this case. Thank you. Thank you. Thank you, Mr. Satie. The case of Abbott v. Federal Bureau of Prisons shall be submitted.
judges: WARDLAW, GOULD, CHRISTEN